Rutberg, J.
This matter comes before us by way of an expedited appeal of the trial court’s allowance of defendant’s motion to dismiss plaintiffs complaint for unpaid child support which allegedly accrued prior to June 1972.
Plaintiff and Donald Elkins [hereinafter “decedent”] were married on February 23, 1952, and they were divorced on October 24, 1964 in the Worcester Probate Court. Plaintiff and decedent had two minor children who were 9 and 10 years of age respectively at the time of the divorce. The divorce decree ordered decedent to pay plaintiff $40.00 per week for "... her support and that of the minor children, i..” In July 1971, approximately seven years after the entry of the divorce decree nisi, plaintiff petitioned the Probate Court to adjudge the decedent to be in contempt of that Court alleging that he failed to pay $14,000.00 ordered by the decree.[2] On June 28,1972, the Probate Court entered the following:
IT IS DECREED that said [decedent] ... is guilty of contempt of Court in his said neglect and refusal, and it is ordered that he be committed to the jail at Worcester ...for the term o/two years — until he shall purge himself of his said contempt by payment of the sum of Fourteen Thousand dollars ... or until further order of this Court.... [emphasis and italics in original].
While the record contains no documentation, the parties claim that decedent was released from his incarceration prior to the expiration of its term despite having not made the ordered payment.[3]
Decedent’s younger child was emancipated in July 1973, and decedent died on April 10, 1997 having made no further payments to plaintiff. Decedent’s will was admitted to probate and defendant was appointed as his executrix; the will made no bequest to the plaintiff. Plaintiff filed this action on December 24,1997, seeking a judgment for $14,000.00 plus interest of $37,840.00. In lieu of answering the complaint, defendants filed a motion to dismiss contending that the complaint failed to state a claim upon which relief could be granted and the District Court lacked subject matter jurisdiction in a case to collect a Probate Court contempt judgment. Defendants’ motion was allowed on February 19,1999 (Virzi, J.), and plaintiff filed this appeal in a timely manner.
*104 As a general rule, the District Court has original concurrent civil jurisdiction with the Superior Court; however, defendants maintain that the District Court lacks subject matter jurisdiction over this claim because it is grounded in an attempt to collect unpaid child support. Defendant goes on to argue that since child support obligations are continually subject to modification, they can only be enforced by the Probate Court which has jurisdiction over modification. Defendant cites this Court to Brown v. Greenlow which, on first blush, appears to support her contention. 330 Mass. 88 (1953). In a dictum, the Supreme Judicial Court quoted the ancient case of Knapp v. Knapp that held that the full amount of alimony arrears at the testator’s death was not a liquidated sum as it was within the discretion of the court to, in effect, modify a claim for same. 134 Mass. 353 (1883).
Plaintiff distinguishes Brown v. Greenlow and a more recent case cited by defendant, Spiliotis v. Campbell [13 Mass. App. Ct. 189 (1982)], as the underlying arrear-ages in those cases had not been litigated previously as was the case in this matter. Plaintiff goes on to argue that the contempt decree was a “final judgment,” which clearly makes it a liquidated debt within the District Court’s general civil jurisdiction. The plaintiff cites no authority for her assertion; indeed, she misnames the order of the Probate Court a contempt judgment. More important, the exact import of the contempt decree was to find the decedent to be in contempt and order him to be incarcerated as a punishment for his contempt. While the decree allowed the decedent to purge himself of his contempt with a payment of $14,000.00, nothing contained in the decree establishes a money judgment for the plaintiff. Indeed, if the decree, as entered, created a judgment, it could have had the effect of allowing plaintiff to collect the outstanding sum twice: one payment would be necessary to purge defendant’s contempt, while another would be required to satisfy the putative judgment.
In 1986, the legislature added chapter 119A to the General Laws, and §13 (a) of this chapter provided that: “(a)ny payment or installment of [child] support ... shall be on or after the date it is due, a judgment by operation of law....” While neither party to this appeal cited us to this chapter, we believe that it is controlling in this case despite the fact that it was enacted fifteen years after the entry of the contempt decree. The retroactive application of a statute has been addressed by the Supreme Judicial Court on many occasions, and recently in a somewhat analogous situation the SJC reiterated its holding on retroactivity. Child Support Enforcement Division of Alaska v. Brenckle, 424 Mass. 214 (1997). Citing Hanscom v. Malden & Melrose Gas Light Company, the Court restated the basic presumption that statutes apply prospectively, unless their specific terms indicate an intent to make them apply retroactively. 220 Mass. 1 (1914). The Brenckle Court went on to quote the Hanscom dictum that:
‘It is only statutes regulating practice, procedure and evidence, in short, those relating to remedies and affecting substantive rights, that commonly are treated as operating retroactively. ...’ Child Support Enforcement Division of Alaska v. Brenckle, supra at 219, citing Hanscom v. Malden & Melrose Gas Light Company, supra at 3.
The Brenckle case required the SJC to determine if the provisions of a then recently enacted interstate collection of support statute applied retroactively. [G.Lc. 209D, commonly known as “UIFSA”] The payments which were sought in the Brenckle case accrued prior to 1991 when a previous child support collection statute was in force. [G.L.c. 273A, commonly known as “URESA”] In determining that UIFSA provisions to collect out of state support orders was indeed retroactive, the Court first determined that the legislative intent was to make the statute apply retroactively. Justice Marshall then went on to say that the new statute “does not create a duty of support, but rather provides the procedural framework for enforcing [an existing obligation].” Child Support Enforcement Division of Alaska *105 v. Brenckle, id.
Similar to the UIFSA statute, chapter 119A, §13 (a) does not create a new duty for parents to support their children, rather it relates to the process to enforce this duty. The legislative intent as spelled out in section 1 is that the statute is to be construed liberally to enforce support orders. Chapter 119A sets up “additional remedies” to effect enforcement of existing child support obligations, clearly analogous to the situation in the Brenckle case. G.L.c. 119A, §1. Additionally, the Legislature anticipated defendant’s argument that support orders cannot be final judgments as they may be subject to retroactive modification, as the statute goes on to provide that: “said judgment [arising out of operation of law] shall not be subject to retroactive modification....” G.L.c. 119A, §13(a). We hereby find that the aggregate of decedent’s unpaid support obligation became a final judgment of the Probate Court by the adoption of Chapter 119A.
There are substantial public policy grounds to support our interpretation of decedent’s support obligation, while there are also substantial policy issues that militate toward a determination that Chapter 119A should not be applied retroactively. Not only are support obligations somewhat unique because the legislature has acted in many ways to facilitate their enforcement, but also they are unique in that they can involve relatively small sums which accrue for months and months. As a result it is often impractical, if not impossible, for a parent who is not receiving his or her ordered support to effectively enforce their rights as they become due without creating more expense than what is at stake. The additional possibility that “deadbeat” moms and dads may have entered new relationships thereby creating more competition for very scarce income only exacerbates the problems which their former spouses face. On the other hand, there is merit in putting an end to litigation, and our ruling does open up a matter that has been dormant for twenty-five years. However, our ruling merely determines that any unpaid support payment owed by decedent to plaintiff is a judgment which plaintiff may seek to enforce. Plaintiff may well be faced with the insurmountable obstacle posed by the presumption contained in G.L.c. 260, §20; and, if defendant raises such a statute of limitations defense, the relative rights and equities of the parties will be given a full and fair hearing as part of the trial of plaintiff’s complaint.
The Order of the Dudley Division of the District Court Department allowing the dismissal of plaintiffs complaint is hereby reversed, and this matter is remanded to said Court for further proceedings consistent with the above.

 This round sum represents practically all of the aggregate payments which accrued from the date of the decree to the date of the contempt petition.

 Plaintiff claims that decedent made no payments during his incarceration; while defendant claims he made a payment of $1,000.00. All parties agree nothing further was paid.